IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | Case No. 17 CR 656 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| TOWER CONTRACTING LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION & ORDER**

On March 12, 2020, a jury found two defendants in this case, including Tower Contracting, LLC ("Tower Contracting"), guilty of nine counts of wire fraud and one count of bribery, and the court entered a judgment against Tower Contracting with a $1,200,000.00 fine and $4,000.00 assessment (Doc. 217). In the instant motion, the government is seeking to enforce the fine by substituting LRC Group for Tower Contracting under Federal Rule of Civil Procedure 25(c) (Doc. 384). For the reasons discussed below, the court grants the government's motion to substitute LRC Group for Tower Contracting.

**BACKGROUND**

Tower Contracting, the relevant party-defendant, is no longer in business. Anthony and Philip Blum formed Tower Contracting in 2009 to perform general contracting work on construction projects, and they owned the company in equal shares. According to Anthony's deposition testimony, Tower Contracting was a "paper contractor" with few employees that hired subcontractors to perform the actual construction. Every year, Anthony and Philip made membership distributions to themselves without consulting anyone else. Philip testified that they determined the amount of their distributions by looking at profitability and cash flow. Anthony and Philip formed LRC Group in 2010 as a "paper contractor" like Tower Contracting, and they

1

also share equally in membership. Anthony testified that they formed LRC Group to work on small, residential projects.

Between 2014 and 2017, Anthony and Philip used both Tower Contracting and LRC Group to participate in a project run by the Illinois Housing Development Authority ("IHDA"). According to Anthony, they named LRC Group as the developer and Tower Contracting as the general contractor because the IHDA would not allow one company to act as both the developer and contractor on a project, to promote transparency in the building process. Anthony and Philip identified Tower Contracting as a subcontractor to LRC Group, although Tower Contracting was the general contractor on the project. Between 2014 and 2017, LRC Group's business was largely limited to the IHDA projects.

On November 30, 2017, the United States filed a ten-count indictment against Tower Contracting for its role in a bribery scheme. Anthony testified that Tower Contracting was legally barred from seeking public sector construction contracts after it was indicted; he stated, "[a]s soon as that indictment came down, we couldn't bid anything else." Tower Contacting stopped bidding on projects after 2019, but it bid on and was awarded commercial construction projects after the indictment was filed, and had approximately two years' worth of backlogged work in 2017.

In 2018, Tower Contracting was awarded a contract to complete the building of the Prairie Pointe Assisted Living and Memory Care facility ("the Prairie Pointe project" or "the project"), which was completed in October 2021. Steven Lirtzman ("Lirtzman") oversaw the financial aspects of the Prairie Pointe project, which is listed on the 2018–2020 job reports for both Tower Contracting and LRC Group. Lirtzman testified that Tower Contracting submitted a list of intended subcontractors for the project, which designated LRC Group for many parts of

the work. He testified that he did not know that Anthony and Philip owned LRC Group, or that LRC Group was a paper contractor. Lirtzman further testified that Tower Contracting's first few submitted pay applications listed LRC Group as a subcontractor but did not disclose that LRC hired subcontractors itself, so Lirtzman and Chicago Title (the title insurer) approved the payments. Lirtzman did not realize that LRC Group was a paper contractor until one of its subcontractors contacted Chicago Title to complain about not getting paid, which was problematic because Chicago Title had not received waivers from the subcontractors.

After realizing that LRC Group was acting as a paper contractor, Lirtzman and Chicago Title treated LRC Group as a general contractor and required sworn statements disclosing the names and cost allocations of subcontractors. Lirtzman testified that he then realized that Tower Contracting was directing money and general contracting responsibilities to LRC Group, and LRC Group began including a line item for a "management" fee, which Lirtzman found puzzling because Tower Contracting was hired to manage the project. LRC Group received $3,394,211.60 in management fees on the Prairie Pointe project.

The government's forensic accountant, Mary O'Connor ("O'Connor"), reviewed the financial records of Tower Contracting and LRC Group, and found that their accounting records demonstrated that the companies transferred money back and forth in related transactions such as the Prairie Pointe project. She also found that, before checks were issued to LRC Group, Tower Contracting would record the amounts as receivables in its accounting records and remove the receivables from its books after payment was issued to LRC Group. O'Connor determined that Tower Contracting transitioned about 60 percent of its Prairie Pointe general contracting revenue and about 69 percent of its Prairie Pointe pre-tax profit to LRC Group. This means that Tower Contracting transferred approximately $4.02 million in revenue and $474,000 in pre-tax profit to

LRC Group on that project. Moreover, O'Connor also determined that LRC Group's 2020 financial statement stated that, regarding the Prairie Pointe project, LRC Group served as "general contractor to a related party, owned by the members of LRC Group, LLC," which is Tower Contracting.

As of 2020, LRC Group has three employees in addition to Anthony and Philip: Ryan Gasbarro ("Gasbarro"); Colleen Mora ("Mora"); and Nancy Blum ("Nancy"). Nancy testified that she simultaneously worked for Tower Contracting and LRC Group from 2011 until 2019, and began working exclusively for LRC Group in 2019. She testified that Tower Contracting paid her wages when she worked for LRC Group and issued her W-2 form, and she reported to Tower Contracting managers. Mora and Gasbarro also worked at Tower Contracting before LRC Group. Mora testified that she began working for LRC Group in February 2020, with the same title and duties as her position at Tower Contracting except that she no longer had employees working for her. She reported to Anthony and Philip in both positions. Mora stated that there was a period when she used both her Tower Contracting email address and LRC Group email address, and switched depending on what she was working on. She used the same computer and software for both companies, and Tower Contracting paid employees' wages when they worked on matters involving LRC Group. Gasbarro worked on the Prairie Pointe project from 2018 or 2019 until 2020 as a Tower Contracting employee. He began working for LRC Group in May 2020. At LRC Group, his basic construction duties did not change, although he is now responsible for putting together and submitting bids for commercial projects.

While LRC Group began as a paper contractor on small, residential projects, it now advertises as a general contractor for both public and private, residential and commercial construction projects, and bids on project sizes of $250,000 and above. In 2020, LRC Group was

the general contractor of three public sector construction projects with a combined contract amount of $1.4 million, with four additional public sector contracts in 2021. Gasbarro testified that 90 to 95 percent of his time working for LRC Group is spent on bidding for commercial construction contracts, and according to LRC Group's insurance provider, which audited its records, 75 percent of LRC Group's business was commercial in 2021.

O'Connor, the forensic accountant, found that Anthony and Philip received significantly higher cash distributions and indirect distributions from Tower Contracting in 2018 and 2019, despite operating losses.[1] Indirect distributions included property purchases and payments for personal credit cards, and the distributions were drawn from Tower Contracting's capital rather than current operations. O'Connor stated that these distributions are evidence that Anthony and Philip were liquidating Tower Contracting's assets to avoid paying creditors, such as the government, by masking Tower Contracting's ability to pay.

O'Connor also found that Tower Contracting maintained a money market account from at least 2014 until 2019. At the beginning of 2019, the account had a balance of $1,567,868, and by the end of 2019 the balance was $0. Although Anthony testified that Tower Contracting used the account as a "sweep" account to pay bills, no withdrawals were made between October 2014 and August 2016. The account balance more than doubled in value from 2014 to the end of 2018, before dropping to $0 in 2019. Anthony testified that the balance dropped because Tower Contracting was not getting new business after the indictment and had to complete its existing backlog of work. O'Connor, however, found that the savings account was depleted by transferring money to the company's checking account and by paying cash distributions to

---

[1] In 2018, Anthony and Philip received $716,905 in distributions (four percent of revenue), and in 2019, they received $730,769 (thirteen percent of revenue). Before 2018, they received only two percent of revenue in distributions.

Anthony and Philip, with some money used to pay subcontractors and overhead expenses. On July 31, 2021, the checking account contained only $388. As previously mentioned, on March 12, 2020, the court entered a judgment of guilty against Tower Contracting LLC and imposed a $1,200,000.00 fine and $4,000.00 assessment.

Tower Contracting offers an affidavit by Michael Horst ("Horst"), its accountant, to argue that Tower Contracting and LRC Group are independent companies. Horst prepared tax returns for Tower Contracting and LRC Group, and stated in his affidavit that Anthony and Philip received cash distributions in anticipation of "potential future" tax liabilities. Among other things, Horst stated that the companies file separate income tax returns, maintain separate bank accounts, and do not commingle cash, property, or other assets. Tower Contracting also proffers six payments to Tower Contracting, LRC Group, and other subcontractors during the Prairie Pointe project, including a breakdown of payments, to oppose substitution.

## **DISCUSSION**

The government argues that LRC Group should be substituted for Tower Contracting under Federal Rule of Civil Procedure 25(c) because LRC group is a mere continuation of Tower Contracting, and Tower Contracting transferred its assets to LRC Group without payment, resulting in the demise of the party-defendant.[2] Under Federal Rule 25(c), an entity can be substituted as the judgment debtor in an action "[i]f an interest is transferred" to that entity during litigation, including during proceedings to enforce a judgment. See, e.g., Sullivan v. Running Waters Irrigation, Inc., 739 F.3d 354, 357 (7th Cir. 2014); Carpenters Pension Fund v. Artistry Woodworking, Inc., No. 92 C 2069, 1997 WL 12794, at *2 (N.D. Ill. Jan. 10, 1997).

---

[2] Fines and restitution enforcement proceedings are excluded from the Federal Rules of Criminal Procedure in Rule 1(a)(5)(C). Therefore, the Seventh Circuit treats proceedings to aid in the execution of criminal judgments as civil in nature. See United States v. Kollintzas, 501 F.3d 796, 800 (7th Cir. 2007).

Courts have found that an "interest" is transferred when the entity to be substituted is a successor of the original party.[3] See Panther Pumps & Equip. Co. v. Hydrocraft, Inc., 566 F.2d 8, 24 (7th Cir. 1977).

While a successor corporation does not generally assume the obligations of a transferor corporation, courts recognize exceptions where the successor is merely a continuation of the transferring corporation, and where the transaction is entered into to escape liability. See id. at 25 (citing Forest Laboratories, Inc. v. Pillsbury Co., 452 F.2d 621 (7th Cir. 1971)). In Illinois, courts evaluate multiple factors to determine whether a successorship is a mere continuation, including: (1) continuity of ownership; (2) continuity of the business enterprise between the two companies; (3) whether the predecessor corporation ceases operations and then dissolves; and (4) whether the successor assumes the liabilities and obligations necessary for the uninterrupted continuation of the predecessor's business. See Steel Co. Morgan Marshall Indus., 278 Ill. App. 3d 241, 248 (1996).

In the instant case, the government argues that substitution under Rule 25(c) is appropriate because LRC Group is a successor and mere continuation of the party-defendant, Tower Contracting. The court agrees. There is complete continuity of ownership between Tower Contracting and LRC Group, and Anthony and Philip have operated both companies as paper contractors in the construction industry, with the same employees (Nancy, Mora, Gasbarro) and resources. As the government emphasizes, "[t]he continuity between the companies is the most apparent in the construction projects for which the Blums interchangeably and simultaneously used both companies," such as the IHDA projects, to transfer revenue

---

[3] Tower Contracting argues that substitution is inappropriate in this case because no "interest" was transferred. The court finds that Tower Contracting's argument misses the point; as the government argues, the "interest" is Tower Contracting, a party-defendant.

throughout the course of the instant case, and use "whichever name best served their business interests in the moment."

After the 2017 indictment, Anthony and Philip used Tower Contracting to shift revenue to LRC Group, and used LRC Group to continue the party-defendant's business after Tower Contracting ceased operating. LRC Group began to take on Tower Contracting's employees as Tower Contracting was winding down its public sector and commercial operations. Although Anthony testified that LRC Group was formed for residential projects, auditing shows that 75% of LRC Group's business was commercial in 2020. O'Connor's forensic accounting further demonstrates that Anthony and Philip used Tower Contracting to transfer money to LRC Group after the indictment, when the possibility of judgment against Tower Contracting loomed larger.

To the extent that Tower Contracting offers Horst's affidavit as a form of expert witness testimony, as the government argues, the court concludes that Tower Contracting is barred from doing so for failure to identify him as an expert witness and produce a report within the proper time. See United States v. Z Invest. Properties, 921 F.3d 696, 698–99 (7th Cir. 2019) (affirming a court's decision to strike expert testimony for non-disclosure and non-production of an expert report without substantial justification). To the extent that Tower Contracting offers Horst as a fact witness, his affidavit has little weight in countering O'Connor's forensic accounting conclusions because it offers no contradictory supporting evidence. Tower Contracting's attached charts, even if admissible, similarly do not carry much, if any, weight.

Last, the government also argues that LRC Group should be substituted for Tower Contracting based on Tower Contracting's fraudulent transfer of its assets to LRC Group to avoid paying the court's fine in the instant case, citing Panther Pumps & Equip. Co. v. Hydrocraft, Inc., 566 F.2d 8 (7th Cir. 1977). Although this argument has a great deal of weight,

the court does not address this issue because the government's mere continuation theory is sufficient to justify substitution on its own. Accordingly, the court grants the government's motion to substitute LRC Group for Tower Contracting pursuant to Rule 25(c).

## **CONCLUSION**

For the reasons discussed above, the court grants the government's motion to substitute LRC Group for Tower Contracting as the defendant in this case (Doc. 384). The Clerk of Court is directed to amend the caption in this case to substitute LRC Group, LLC as defendant (3) in place of Tower Contracting, LLC.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE:  July 13, 2023**